<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>ALL RIGHT, TITLE AND INTEREST, ETC.<br>(8 BAYVIEW TERRACE), ET AL.<br><br>                     Defendants. | Civ. No. 00-1454 (DRD)<br><br><u>**O P I N I O N**</u> |

<u>**DEBEVOISE, Senior District Judge**</u>

This matter arises out of a civil forfeiture proceeding instituted on March 28, 2000 by Plaintiff, the United States of America ("United States" or "the Government"), against certain real and personal property belonging to Imre Papp ("Imre") and his wife, Maria ("the Papps"), including a residential dwelling located at 8 Bayview Terrace in Greenbrook, New Jersey ("the house" or "the residence") and the contents of three bank accounts held in New Jersey.[1] The alleged illegal activity on which the forfeiture is premised involved a scheme in which Imre and his late brother, Endre, forged medium-term fixed-rate notes in the name of Seeland Bank –

---

[1] The bank accounts at issue are: (1) account number 6905-8830 held at the branch office of Charles Schwab and Company, Inc., located at 1170 Route 22 East, Bridgewater, New Jersey, ("Charles Schwab account"); (2) account number 0560328351 held by Unitrade Unlimited at the branch office of Independence Community Bank located at 905 Broad Street, Newark, New Jersey ("Independence Community Bank account"), and (3) account number 0002721465 held at the branch office of Summit Bank located at 630 Franklin Boulevard, Somerset, New Jersey ("Summit Bank account").

which has since been purchased by the Union Bank of Switzerland, AG ("UBS") – and proceeded to cash the notes and their attached coupons for over 20 million Swiss francs.

In an Opinion and Order dated October 5, 2009, the Court granted the Government's Motion to Reopen and ruled that that the majority of the Defendant property – including the residence and the contents of the Charles Schwab and Independence Community Bank accounts – were forfeited pursuant to 18 U.S.C.§981.  With respect to the Summit Bank account, however, the Court found that there was a material dispute of fact as to whether a balance increase of $13,894, which occurred after Imre Papp was arrested on August 25, 1999 but before the account was frozen by federal authorities on March 27, 2000, was attributable to lawfully-obtained salary payments to Maria Papp.  See 2009 WL 3246601 at *14.  In order to settle that question, the Court ordered the parties to submit documentary evidence showing what portion of the aforementioned increase was derived from Maria Papp's wages.

## I. BACKGROUND

On November 3, 2009, Maria Papp filed an affidavit outlining her claim not only to the disputed $13,894, but the entirety of funds contained in the Summit Bank account.  Attached to that affidavit were bank statements showing the various deposits made to the Summit Bank account during the period in question.  In addition to funds derived from her wages – the only source the Court designated as legitimate in its prior Opinion – Maria Papp asks that she be allowed to retain $18,000 attributable to a sale of heavy equipment owned by her husband Imre and $21,217.78 in funds that were transferred from the Charles Schwab account.  See (Maria Papp Aff. of November 3, 2009 at¶4(c),(e).)

On November 5, 2009, the Government submitted an affidavit from Federal Bureau of Investigation ("FBI") Special Agent Scarlette A. Lanier, a law enforcement officer familiar with

the action.  Ms. Lanier conceded that, after reviewing the records of deposits to the Summit Bank account, it appeared that $11,339.45 in salary payments were made to that account from Maria Papp's employer after Imre's arrest.  (Scarlette Lanier Aff. of Oct. 5, 2009 at ¶11.)  Special Agent Lanier claimed, however, that "[u]tilizing the first in first out (FIFO) method of accounting, deposits made prior to the $21,217.78 deposit of funds from the Charles Schwab account on November 22, 1999 do not factor into the $15,894.04 balance in the account at the time the account was frozen on March 27, 2000."  (Id. at ¶12.)  Based on that contention, Special Agent Lanier conceded that "Maria Papp should have funds in the amount of $9,474.86 returned to her when the account is liquidated upon final forfeiture." (Id. at ¶13.)

## II.  DISCUSSION

The legal standards for determining whether property is subject to forfeiture pursuant to 18 U.S.C. §981 are set forth in the Court's prior Opinion, and need not be repeated here.  As discussed in that ruling, the only question remaining in this case is what, if any, portion of the $13,894 increase in the Summit Bank account's balance between Imre Papp's arrest and the time that account was frozen was attributable to Maria Papp's lawfully-derived salary payments.[2] 2009 WL 3246601 at *16.  The Court has already ruled that such payments are not subject to forfeiture and must be returned to Maria Papp.  Id. at *14.

---

[2] As discussed in the Court's October 5, 2009 Opinion, there is no evidence that the businesses run by Imre Papp or his home construction ventures, of which the "heavy equipment" referred to by Maria Papp in her Affidavit were presumably assets, were not funded using the proceeds of illegal activity.  Id.  The Court has already ruled that funds and property derived from those activities are subject to forfeiture.  Id.  Therefore, Maria Papp's claim to the $18,000 from a sale of "heavy equipment" has already been rejected, and need not be addressed again at this stage. Similarly, Ms. Papp's claim to the $21,217.78 transferred from the Charles Schwab account must also be rejected.  The Court has already ruled that the contents of that account were more likely than not the proceeds of illegal activity, and are therefore forfeited under 18 U.S.C. §981.  Id. at 15.

3

The Government concedes, by way of Special Agent Lanier's Affidavit, that at least $9,474.86 of the funds contained in the Summit Bank Account is not subject to forfeiture. (Lanier Aff. at ¶ 13.) It claims, however, that $1,865.03 – the difference between the aforementioned figure and the total amount of Maria Papp's salary payments – should be retained by the Government because, under the FIFO method of accounting, that amount of the account's current balance should be attributed not to lawfully-gotten wages, but to the illegally-obtained deposits which took place after November 22, 1999.

The Court declines to adopt the Government's proposed accounting methods. At the time of Imre Papp's arrest on August 25, 1999, probable cause existed to believe that the funds contained in the Summit Bank account were derived from illegal activity. The account could have been frozen at that time. The Government may recover funds deposited after that date if there is evidence to believe that they were the proceeds of illegal activity, such as the $18,000 deposit from the sale of "heavy equipment" and $21,217.78 transferred from the Charles Schwab account. However, those funds were commingled in the account with money – in the form of Maria Papp's salary payments – that was undisputedly obtained through lawful means. Had the Government frozen the account at the time of Imre Papp's arrest, Maria's wages would have been routed to a different account and such commingling would not have occurred. Therefore, the Court holds that allowing the Government to retain any amount of those payments would unfairly reward its delay in freezing the account, and will order the entire amount of Maria Papp's salary payments ($11,339.45) be returned to her.

4

## III.  CONCLUSION

Pursuant to the Court's earlier Opinion and Order, the Summit Bank account shall be forfeited and liquidated immediately.  Upon liquidation, the Government shall reimburse Maria Papp in the amount of $11,339.45.

                                                                        **s/ Dickinson R. Debevoise**
                                                                        DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: January 4, 2010